**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **RICARDO VÉLEZ AMADOR; ET AL.,** *Plaintiffs,* V. **GUILLERMO GARCÍA TORRES, ET AL.,** *Defendants.* **IN THE MATTER OF:** **GUILLERMO GARCIA TORRES; HIS WIFE ROSA MONTERO-VARGAS AND THE CONJUGAL PARTNERSHIP BETWEEN THEM,** FOR EXONERATION FROM OR LIMITATION OF LIABILITY AS OWNER OF THE M/V LA NENA II *Plaintiffs-Petitioners.* | **Civil No**. 17-2050 (DRD) 17-2168 (DRD) 17-1502 (DRD) 17-2145 (DRD) **Consolidated Cases** |

***OMNIBUS* OPINION AND ORDER**

Pending before the Court are two motions filed by Plaintiffs, Third-Party Plaintiffs, Cross-Claimants and Claimants in the Limitation Action, Claude McCann, Sylvie Laurin, Julie McCann, minor JHM, Vincent Boileau, and minor SBC (hereinafter the "McCann Group"); Third Party Plaintiffs, Counter-Claimants and Claimants in the Limitation Action, Sharisse J. Johnson and Lourdes Beth Rodriguez (hereinafter the "Johnson-Rodríguez group"); Claimants in the Limitation Action Mario R. Ortega, Argyro Ortega, minor AGO, and minor MAO; Claimants in the Limitation Action, Gerardo Hernández, Evelyn Meléndez, minor C.H.M., Walter Ortega, Merlyn Meléndez, and minor B.O.M.; Claimant in the Limitation Action, Somara Soto Rodríguez's (collectively, the

"Claimants"), to wit, *Motion for Sanctions Against Ricardo Vélez Amador, Gabriela Agulló Pagán and the Common Law Marriage Between Them Because of Spoliation of Evidence* (Docket No. 181); and *Motion for Sanctions Against Guillermo García Torres, Rosa Montero-Vargas and the Conjugal Partnership Between Them, Guardian Insurance Company, Inc.; and José Luis Hernández Capata, Nydia Martinez Vélez and their Conjugal Partnership because of Spoliation of Evidence* (Docket No. 182).

For the reasons stated herein, Claimants' *Motion for Sanctions Against Ricardo Vélez Amador* (Docket No. 181) is hereby **DENIED**, and Motion *for Sanctions Against Guillermo García Torres* (Docket No. 182) is hereby **GRANTING IN PART AND DENYING IN PART**.

## I.    FACTUAL PROCERDURAL BACKGROUND

The instant case stems from a collision between M/V LA NENA II (hereinafter, "LA NENA II") and the recreational vessel M/V ANDREA GABRIELA (hereinafter, "ANDREA GABRIELA"), during a voyage between La Parguera village to the nearby Bioluminescent Bay on the evening of July 25, 2017. During the voyage to the Bioluminescent Bay, LA NENA II was struck on her port aft quarter by ANDREA GABRIELA.

After the collision, the United States Coast Guard initiated an investigation as to the circumstances behind the collision, including interviewing witnesses and inspecting the vessels. Ultimately, a report was issued wherein LA NENA II was subject to a warning and fine due to the absence of a qualified deckhand onboard while travelling on the night of July 25, 2017, as required by the LA NENA II's *Certificate of Inspection*. *See* Docket No. 33, Exhibit 1.  Whereas, the ANDREA GABRIELA, was found to be operating a recreational vessel in a negligent manner or interfering with the safe operation that endangers life, limb or property of a person in violation

2

of 46 U.S.C. § 2302(a) on the part of the operator of a vessel. A fine was also imposed. The charge also involved the speed at which the ANDREA GABRIELA was travelling on the night of the subject voyage.

However, the instant controversy stems out of alleged breaches of duty of the litigants to preserve evidence in the instant case. According to Claimants, Plaintiffs, Ricardo Vélez-Amador, and Gabriela Agulló-Pagán failed to preserve data pertaining to this case, particularly information stored in the GPS Navionics App on the night of the collision by Mr. Vélez-Amador. According to Claimants, Mr. Vélez-Amador changed mobile carriers and subsequently sold the cellphone that was used on the night of the incident on eBay. *See* Docket No. 181. In turn, Claimants allege that Plaintiff-Petitioner, Guillermo García-Torres, failed to preserve evidence of the case at bar, by disposing in the trash of the navigation lights and the navigation lights' electric panel that were in the LA NENA II vessel during the subject voyage. *See* Docket No. 182.

According to Claimants, on August 1, 2017, just seven (7) days after the incident, the legal representatives of the owner of LA NENA II and its insurer, Guardian Insurance Company, sent a letter to Mr. Ricardo Vélez-Amador, Master of the ANDREA GABRIELA, requesting preservation of evidence related to the July 25, 2017 collision. *See* Docket No. 181, Exhibit No. 7. Instead, owners of LA NENA II and the ANDREA GABRIELA disposed of evidence that would be subject to a potential litigation.

## II.     LEGAL ANALYSIS

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Perez v. Hyundai Motor Co.*, 440 F. Supp. 2d 57, 61 (D.P.R. 2006)(*quoting Silvestri v. Gen. Motors*

*Corp.*, 271 F.3d 583, 590 (4th Cir.2001)). As a matter of fact, "[l]itigants have the responsibility of ensuring that relevant evidence is protected from loss or destruction. 'A litigant has a duty to preserve relevant evidence.'" *Id.* (*quoting Perez–Velasco v. Suzuki Motor Co. Ltd.*, 266 F.Supp.2d 266 (D.P.R.2003)). "'The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation . . . If a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence.'" *Perez-Velasco v. Suzuki Motor Co., Ltd.*, 266 F. Supp. 2d 266, 268 (D.P.R. 2003)(*quoting Silvestri v. General Motors Corporation*, 271 F.3d 583, 591 (4th Cir.2001) (citations omitted).

Once the Court determines that a party has met the burden on an spoliation claim, five factors have been considered by district courts of the First Circuit in determining the proper sanction for destruction of evidence, to wit: "1) prejudice to the defendant, 2) whether the prejudice can be cured, 3) the practical importance of the evidence, 4evidence, 4) whether the plaintiff was in good faith or in bad faith, and 5) the potential for abuse." *Vazquez-Corales v. Sea-Land Serv., Inc.*, 172 F.R.D. 10, 13 (D.P.R. 1997)(*quoting Mayes v. Black & Decker (U.S.), Inc.*, 931 F.Supp. 80, 83 (D.N.H.1996)). However, the First Circuit has not adopted this guideline, although other circuits have adopted similar guidelines to determine the proper sanction to impose. "Sanctions for destruction of evidence may include dismissal of the case, the exclusion of evidence, or a jury instruction on the "spoliation inference." *Id.* Regarding the spoliation inference, the First Circuit has explained that,

4

> "[w]hen a document relevant to an issue in a case is destroyed, the trier of fact sometimes may infer that the party who obliterated it did so out of a realization that the contents were unfavorable. Before such an inference may be drawn, there must be a sufficient foundational showing that the party who destroyed the document had notice both of the potential claim and of the document's potential relevance. Even then, the adverse inference is permissive, not mandatory. If, for example, the factfinder believes that the documents were destroyed accidentally or for an innocent reason, then the factfinder is free to reject the inference."

*Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1158–59 (1st Cir. 1996)(internal citations omitted).

### I.    M/V ANDREA GABRIELA

Claimants argue that on August 1, 2017, Mr. Vélez-Amador was notified by counsel for LA NENA II his obligation to preserve evidence that might be subject to a potential litigation as a result of the subject voyage. Thereafter, Mr. Vélez-Amador changed mobile carriers, and as a result thereof, sold the mobile device he used during the voyage on eBay. Part of the stored information was that of the GPS Navionics App which contained information as to the route followed by Mr. Vélez-Amador during the subject voyage and the speed at which the ANDREA GABRIELA vessel was navigating. *See* Docket No. 181.

In turn, Mr. Vélez Amador argues that a route was not recorded on July 25, 2017, rather they used the same route of July 23, 2017. In support of his contention, Mr. Vélez Amador stated under penalty of perjury that although he "was using [his] iPhone 7 with Navionics App as [his] GPS device," and "on the night of July 25, 2017, [he] was using the route recorded on July 23, 2017, to guide [him] to the Bioluminescent Bay," "no route was recorded on the Navionics application" on said date. *See Unsworn Statement Under Penalty of Perjury*, Docket No. 20, Exbibit 1, ¶¶ 3-4. According to Mr. Vélez-Amador, sometime after the collision he changed mobile phone carriers and acquired a new cellphone. However, all his previous information was

5

downloaded into his new cellphone. *See* Docket No. 240, ¶ 20-21. Then, on November 27, 2017, Ms. Agulló-Pagán sold the cellphone where the app was installed on eBay. *Id.* ¶ 22.

Applying the legal standards noted above to the facts, from the moment the United States Coast Guard began its investigation as to the cause of the collision, and several of the passengers had to receive medical attention, the owner of the ANDREA GABRIELA was put on notice that there could be legal repercussions, including actions for damages, as a result of the subject voyage. It would be unreasonable to think otherwise. More evident is the fact that within seven (7) days, that is, by August 1, 2017, the legal representation of the owner of LA NENA II sent a detailed letter to the owner of the ANDREA GABRIELA requesting "[his] assistance in preserving the evidence," which included, "any and all documents, invoices, receipts, contracts, bills, memoranda, e-mails, faxes, letters, complaints, policies of insurance, applications for insurance and claims (in paper or electronic form) related to the [] incident." Docket No. 181, Exhibit 7.

Particularly, as to the ANDREA GABRIELA, the relevance of the GPS Navionics App to the present litigation is obvious, since it revolves around the fact that the ANDREA GABRIELA vessel was potentially speeding during the subject voyage. The owner of the ANDREA GABRIELA was effectively put on notice that any information related to the subject voyage had to be preserved for a potential litigation. However, the information sought by Claimants can easily be confirmed with the report issued by the U.S. Coast Guard which found that the ANDREA GABRIELA was being operated in a negligent manner, particularly as to speeding. *See* Docket No. 181, *see also* Docket No. 181, Exhibit 1. In any event, if the information related to the GPS Navionics App was destroyed when exchanging cellphone units, the situation was accidental. Therefore, the Court finds penalizing the owner of the ANDREA GABRIELA unjustified.

## II. M/V LA NENA II

Claimants argue that the owner of LA NENA II disposed of the navigation lights and the navigation lights' electric panel that were on LA NENA II during the subject voyage "complicat[ing] the dispute of facts regarding the wiring of the lights panel and energizing its navigational lights including the 360 degree all white light affixed on the top of the canopy of LA NENA II on the night of the collision." Docket No. 182 at 10. It is currently under dispute whether LA NENA II had its navigation lights on when the incident occurred. *See Omnibus Opinion and Order*, Docket No. 258 at 34. Particularly, the controversy remains as Captain José Hernández Zapata testified under oath that "the second switch on the discarded electrical panel energized both the 360 degree all white light affixed on top of the canopy and the interior canopy lights, such that if the canopy lights were extinguished . . . so too would the 360 degree all white light used for navigation." *See id.* He further testified that the third switch on the panel was inoperative or not connected. The owner of LA NENA II denied both admissions. Hence, in order for Claimants to evaluate whether the LA NENA II navigation lights were properly working was by inspecting them, but instead they were thrown away.

In order to justify that the navigation lights and the navigation lights' electric panel that were on LA NENA II during the subject voyage were thrown away in the trash, (*see* Docket No. 182, Exhibit 1 at 86[1]), the owner of LA NENA II argue that "as this vessel represents Petitioners' main source of income, almost immediately after the casualty, Petitioners unwittingly started to

---

[1] Q Do you have the navigation lights, did you preserve those?
A No.
Q You threw them away, right?
A Yes, they were part of the debris.

7

conduct repairs on the M/V LA NENA II and some materials were disposed of. However, the repairs were quickly stopped so that the joint inspection could be conducted." Docket No. 237 at 3. Nonetheless, what Plaintiffs-Petitioners fail to disclose is that the joint inspection took place merely 23 days after the incident, that is, on August 18, 2017. *See* Docket No. 255 at 6; *see also* Docket No. 183, Exhibit No. 5 at 2-4.

Applying the legal standards noted above to the facts, the Court finds that from the moment the United States Coast Guard began its investigation as to the cause of the collision, and several of the passengers had to receive medical attention, the owner of LA NENA II was put on notice that there could be legal repercussions, including actions for damages, as a result of the subject voyage. It would be unreasonable to think otherwise. It is even more evident considering that within seven (7) days, that is, by August 1, 2017, the legal representation of the owner of LA NENA II sent a letter to the owner of the ANDREA GABRIELA "reserv[ing] any and all rights and defenses, at law and in equity for this matter, including his right to claim full redress and reimbursement from [the owner of the ANDREA GABRIELA] for any damages [the owner of LA NENA II] may be forced to pay in connection with the above referenced collision, be it by court order or through settlement." Docket No. 181, Exhibit No. 7 at 2.

Plaintiffs-Petitioners' conduct constitutes, at least, a reckless disregard of their duty to preserve evidence and the Court finds said action cannot go unsanctioned. "The potential for abuse would be high if 'one party is permitted, without sanction, to selectively determine what relevant evidence is worthy of being preserved for use in a . . . suit and to destroy, without notice . . . other evidence, knowing of its potential adverse relevance.'" *Vázquez*, 172 F.R.D. at 15 (*quoting Northern Assurance v. Ware*, 145 F.R.D. 281, 284 (D.Me.1993)). Therefore, the Court

**GRANTS IN PART AND DENIES IN PART** Claimants' *Motion for Sanctions* as to LA NENA II, and accordingly, will sanction Plaintiffs-Petitioners by affording Claimants the opportunity to present a jury instruction on the spoliation inference to the jury on trial. Said instruction is to be proposed by Claimants before trial for the Court's evaluation. The Court deems it is the best course of action given the particular circumstances of the case at bar.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2021.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge